UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| **HUNTINGTON NATIONAL BANK,** <br><br> Plaintiff, <br><br> vs. <br><br> **SHERIDAN PROPCO LLC et al.,** <br><br> Defendants. | **2:23-CV-11458-TGB-DRG** <br><br> HON. TERRENCE G. BERG <br><br> **OPINION AND ORDER REQUIRING SUPPLEMENTATION OF RECEIVER'S MOTION FOR ENTRY OF ORDER AUTHORIZING SALE OF RECEIVERSHIP PROPERTY FREE AND CLEAR OF ALL LIENS (ECF NO. 25).** |

Before the Court is a motion by the Court-appointed Receiver, M. Shapiro Management Company LLC, for the entry of an order authorizing sale of the Receivership Property[1] free and clear of all liens,

---

[1] The Receivership Property comprises of two properties: (1) Land situated in the City of Detroit, Wayne County, Michigan, described as:
> Lots 1 and 2 of SUBDIVISION OF BLOCK NO. 100, CASS FARM, according to the plat thereof recorded in Liber 1 of Plats, Page 300, Wayne County Records.
> Tax Item Nos. 000932-9/Ward 04; 002019.147/Ward 23
> Commonly known as 4417 Second Avenue

and (2) Land situated in the City of Detroit, Wayne County, Michigan, described as:
> Lots 40 and East ½ of Lot 39 of WILLIAM A. BUTLER'S SUBDIVISION of Out Lots 102, 104 & 106 and that part of

in accordance with 28 U.S.C. §§2001–2002. ECF No. 25. Defendants filed a response in opposition on October 8, 2025, ECF No. 28, and the Receiver replied on October 13, 2025, ECF No. 30. For the following reasons, the Court orders the Receiver to **SUPPLEMENT** the motion.

## I. BACKGROUND

### A. Procedural Background

On June 20, 2023, Plaintiff The Huntington National Bank filed the instant action after Defendants Sheridan Propco LLC and Wellesley Propco LLC defaulted on a loan in an original amount of $12,570,000.00 (the "Loan"). ECF No. 1, PageID.2; ECF No. 1-2 (Promissory Note). Payment of the Loan was guaranteed by Defendants Michael Ouaknine Living Trust Dated August 27, 2019, John Roberts Gibbs, and Michael Ouaknine. ECF No. 1, PageID.5; ECF No. 1-6 (Guaranty of Payment). The loan is secured by the commercial real estate comprising the Receivership Property. *Id.* at PageID.4; ECF No. 1-2, PageID.29.

On June 23, 2023, the parties jointly stipulated to dismiss the case without prejudice. ECF No. 5. The parties did so "[p]ursuant to a certain forbearance agreement and related documents." *Id.* at PageID.216.

---

> Out Lot 108 lying South of the South line of Putnam Avenue of the Subdivision of the Cass Farm, according to the plat thereof recorded in Liber 11 of Plats, Page 89 of Wayne County Records.
> Tax Item Nos. 000990/Ward 04; 002019.148/Ward 23
> Commonly known as 651 W. Hancock.

ECF No. 25, PageID.655–56.

Under the terms of that forbearance agreement, the maturity date of the loan was extended from December 22, 2023 to March 31, 2024. ECF No. 6-3, PageID.249. "[A]s additional consideration to induce the Plaintiff to forbear on its default remedies and prosecution of its Complaint filed in this matter," "[t]he Defendants agreed and consented to the Appointment of the Receiver over the Borrower's assets." ECF No. 6, PageID.221.

Subsequently, the Defendants defaulted on their obligations under the settlement agreement. *Id.* at PageID.220.

On April 4, 2024, Plaintiff moved to reopen the case and for entry of a consent order appointing receiver. *Id.* at PageID.217. On April 25, 2024, the Court granted the motion and entered a consent order appointing a receiver. ECF No 7.

The consent order appointed M. Shapiro Management Company, LLC (the "Receiver") as the receiver "for Sheridan Propco LLC … and Wellesley Propco LLC … (collectively the 'Company') and all of the real, tangible and intangible property owned by the Company." *Id.* at PageID.317. Under the terms of the order, the Receiver was "ordered and directed to take immediate and exclusive possession, custody and control of the Receivership Estate." *Id.* Additionally, the Receiver was authorized "to transfer, sell, lease, license, exchange, collect or otherwise dispose of Receivership Property." *Id.* at PageID.325. As relevant here, the Receiver

3

was deemed to be "a fiduciary for the benefit of all persons having or claiming an interest in the Receivership Estate." *Id.* at PageID.335.

On September 24, 2025, the Receiver filed a motion for the entry of an order authorizing sale of the Receivership Property free and clear of all liens. ECF No. 25. On October 8, 2025, Defendants filed a brief in opposition of the motion. ECF No. 28. On October 13, 2025, the Receiver replied. ECF No. 30.

On October 29, 2025, the Plaintiff filed a notice of submission of a consent judgment. ECF No. 36. Plaintiff explained that while it had initially planned to "defer entry of the Consent Judgment until after the Receiver's sale was completed, … "[c]ircumstances have changed." *Id.* at PageID.728. In the Notice, Plaintiff stated that it "supports approval of the Receiver's sale motion." *Id.* at PageID.728.

On November 6, 2025, the Court entered the consent judgment. ECF No. 38. The consent judgment stated that "[a] default has occurred under the Forbearance Agreement, which default has been acknowledged by Defendants." *Id.* at PageID.748. Accordingly, the Court ordered, adjudged, and decreed

> that Judgment is entered in favor of Plaintiff Huntington National Bank and against Defendants Sheridan Propco LLC, a Michigan limited liability company, Wellesley Propco LLC, a Michigan limited liability company, John R. Gibbs, an individual, Michael Ouaknine, an individual, and the Michael Ouaknine Living Trust Dated August 27, 2019, jointly and severally, in the amount of $ $17,805,252.60 as of October 24,

4

2025, plus interest thereon at 12.78217% per annum from the date hereof.

*Id.* at PageID.749.

**B. Proposed Sale of the Receivership Property**

In the September 24, 2025 motion for the entry of an order authorizing sale of the Receivership Property free and clear of all liens, the Receiver asked the Court to enter

> an order authorizing the sale of the Receivership Property free and clear of all mortgages, liens, claims and encumbrances, with such mortgages, liens, claims and encumbrances to be transferred to the proceeds of sale, having the same validity and priority as existed prior to sale, with no right of redemption available to any party.

ECF No. 25, PageID.654.

In the motion, the Receiver represents that it "obtained opinions of value of three disinterested persons of the Receivership Property," and marketed the Receivership Property since December 3, 2024, utilizing the Loopnet, Costar, MLS Realcomp and Crexi portals, email blasts and hard copy flyers. As a result of the marketing efforts, the Receiver and/or the broker conducted thirteen tours of the Receivership Property with prospective purchasers and received nine offers for purchase." *Id.* at PageID.650–51.

> These efforts bore fruit: the Receiver
>
> procured an offer for the sale and purchase of the Receivership Property for the sum of $9,000,000.00 from Tzvi Koslowe and

5

> Franz Ivezaj on behalf of an entity to be formed (the "Offer"), on an 'as is-where is, with all faults assumed' basis, as set forth in a purchase agreement dated August 27, 2025 (the "Purchase Agreement").

*Id.* at 651; ECF No. 27 (Purchase Agreement). The Offer and Purchase Agreement also "provided that the prospective purchasers remit an earnest money deposit of $100,000.00." ECF No. 25, PageID.653. The Receiver represents that this deposit "has already been received by the title company to be utilized in the consummation of the transaction should Court approval be obtained." *Id.*

> The Receiver represents that it
>
> believes the proposed sale set forth in the Purchase Agreement to be the highest and best, and would likely exceed the bid amount which would be received at any public sale. The proposed purchase price is over 80 percent of the average valuation obtained by the Receiver from the disinterested persons and therefore complies with the applicable provision of 28 U.S.C. §2001(b).

*Id.* at PageID.651. The Receiver also represents that it

> believes, in the reasonable exercise of its business judgment, that the Offer constitutes the highest and best proposal for the purchase of the Receivership Property which can be expected, and that it should be accepted, as being in the best interest of the receivership estate, and to minimize the further expense to be incurred by and on behalf of the Receiver.

*Id.* at PageID.653.

> Additionally, the Receiver proposed

that the net proceeds of sale, after payment of outstanding taxes, commissions, and other customary closing costs, be applied as follows:

> A. First, to the payment of unpaid fees of the Receiver and its professionals and any other expenses incurred by the Receiver, less a reserve for reasonably anticipated post-closing expenses;
> B. Second, to the repayment of outstanding receivership certificates, if any;
> C. Third, to The Huntington National Bank, as successor to TCF National Bank, until the indebtedness secured by its mortgage has been fully satisfied;
> D. Fourth, to the payment of any additional liens which encumber the Receivership Property; and,
> E. Fifth, to the Clerk of the Court, to be held pending the further order of the Court.

*Id.* at PageID.653–54.

The Receiver also proposes that notice of the sale, including the terms thereof, be published once per week for four consecutive weeks prior to closing in the Detroit Legal News, in compliance with 28 U.S.C. §2002, and that the Receiver thereafter be permitted to file an affidavit with the Court confirming same, and to proceed to closing without further order of the Court.

*Id.* at PageID.654.

Lastly, the Receiver proposes that it file an affidavit of sale with the Clerk of the Court within fifteen days of the closing, attesting to:

> A. The date upon which closing of the sale was held;
> B. The Receiver's compliance with the conditions of the order authorizing the sale of the Receivership Property; and,

7

C. The sale price.

*Id.* at PageID.654–55.

On October 8, 2025, Defendants filed a motion opposing Receiver's motion for the entry of an order authorizing sale of the Receivership Property free and clear of all liens. ECF No. 28. Defendants argued that "[t]he Receiver's proposed $9,000,000.00 sale price is not the highest and best offer available and therefore fails to satisfy the Receiver's statutory and fiduciary obligation to conserve the receivership estate's best interests." *Id.* at PageID.682.

Specifically, Defendants "presented a higher and better offer to acquire the Receivership Properties." *Id.* at PageID.683. Defendants attach this "offer" ("Defendants' Offer") to their opposition brief. ECF No. 28-2. Defendants' Offer appears to be a document in which "Sturgeon Bay Holding Company, LLC and/or a new entity" offers $9,500,000.00 for the Receivership Property and a $100,000.00 "deposit at signing of Purchase and Sale Agreement." *Id.* at PageID.695. The document is signed by John R. Gibbs and Michael Ouaknine, Managing Partners of Sturgeon Bay Holding Company, LLC. *Id.* at PageID.28-2. These two men are the same individuals who are listed as the guarantors of the debt secured by the Receivership Property. *See* ECF No. 1-2; ECF No. 1-6.

Defendants argue that "[t]his fully financeable, unconditional offer demonstrates that greater value and more favorable terms are readily available to the estate. Proceeding at a lower price would cause a

8

substantial and unnecessary loss to the Receivership Estate and its creditors." ECF No. 28, PageID.683.

In its October 13, 2024 reply, the Receiver argues that the "letter of intent was not accompanied by a draft purchase agreement, and significantly, offered no evidence that the prospective purchaser has the financial wherewithal to consummate the transaction described in the letter of intent." ECF No. 30, PageID.699. The Receiver submits that

> absent a purchase agreement which sets forth terms and conditions at least comparable to those set forth in the agreement for which approval is sought in the Motion, and proof of immediately available funds to allow the transaction to close … the Defendants' objection to the sale should be overruled, given the underlying loan history and the defaults which resulted in the appointment of the Receiver.

*Id.*

## II. LEGAL BACKGROUND

Federal Rule of Civil Procedure 66 governs the appointment of receivers in federal court. That rule provides that "the practice in administering an estate by a receiver or a similar court-appointed officer must accord with the historical practice in federal courts or with a local rule." Fed. R. Civ. P. 66. "The role of the receiver is to safeguard disputed assets, to suitably administer the receivership property, and to assist the district court in achieving a final, equitable distribution of the assets." *Liberte Cap. Grp., LLC v. Capwill*, 248 F. App'x 650, 655 (6th Cir. 2007).

Section 2001 of Title 28 of the United States Code governs the sale of real property within a court-ordered receivership. Subdivision (b) provides for the private sale of such real property. *See* § 2001(b). The subdivision provides that

> After a hearing, of which notice to all interested parties shall be given by publication or otherwise as the court directs, the court may order the sale of such realty or interest or any part thereof at private sale for cash or other consideration and upon such terms and conditions as the court approves, if it finds that the best interests of the estate will be conserved thereby. Before confirmation of any private sale, the court shall appoint three disinterested persons to appraise such property or different groups of three appraisers each to appraise properties of different classes or situated in different localities. No private sale shall be confirmed at a price less than two-thirds of the appraised value. Before confirmation of any private sale, the terms thereof shall be published in such newspaper or newspapers of general circulation as the court directs at least ten days before confirmation. The private sale shall not be confirmed if a bona fide offer is made, under conditions prescribed by the court, which guarantees at least a 10 per centum increase over the price offered in the private sale.

*Id.* Accordingly,

> [w]hile § 2001(b) contains discretionary language that allows courts to order the sale of realty "upon such terms and conditions as the court approves, if it finds that the best interests of the estate will be conserved thereby," the statute also includes mandatory language stating that (1) the court "shall appoint" three appraisers, (2) "[n]o private sale shall be confirmed at a price less than two-thirds of the appraised value," (3) the sale "shall be published" in newspapers at least ten days before confirmation, and (4) the sale "shall not be

10

> confirmed" if a bona fide offer guaranteeing "at least a 10 per centum increase" is made.

*Huntington Nat. Bank v. Najero, Inc.*, No. 13-11632, 2014 WL 5473054, at *1 (E.D. Mich. Oct. 27, 2014) (Cleland, J.); *accord SEC v. Priv. Equity Mgmt. Grp., LLC*, No. 09-2901, 2009 WL 10676006, at *2 (C.D. Cal. Nov. 20, 2009).

However, while a court may not waive the mandatory requirements of § 2001(b), *see, e.g.*, *Najero, Inc.*, 2014 WL 5473054, at *1 ("The permissive language allowing the Court discretion to determine what is in the best interests of the estate is therefore limited by the minimum standards delineated by Congress of what satisfies the best interest standard. These standards cannot be waived by this Court."), the parties *may* — for instance, by stipulating to a receivership order, *see Huntington Nat'l Bank v. Big Sky Dev. Flint, LLC*, No. 10-10346, 2010 WL 3702361, at *7 (E.D. Mich. Sept. 16, 2010) (Cohn, J.); *Najero, Inc.*, 2014 WL 5473054, at *2; *Sec. & Exch. Comm'n v. EB5 Asset Manager, LLC*, No. 15-62323, 2016 WL 7508252, at *2 (S.D. Fla. Mar. 25, 2016) ("While the Court may not waive the mandatory requirements of § 2001(b), the parties may."); *but see U.S. S.E.C. v. Wilson*, No. 12-CV-15062, 2013 WL 1283437, at *2 (E.D. Mich. Mar. 28, 2013) (Ludington, J.) (holding that the requirements of § 2001 may not be waived by the parties). Although they have not done so here, parties may also "confer broad powers upon the receiver up to and including the private sale of real property without

11

§ 2001(b)'s formalities." *EB5 Asset Manager, LLC*, 2016 WL 7508252, at *2.

Moreover, in addition to the requirements of § 2001(b), a court must also "find[] that the best interests of the estate will be conserved" by the sale. § 2001(b). In assessing whether the "sale is fair in terms and result and serves the best interests of the estate," the court "has wide discretion." *H&D Ent., Inc.*, 96 F.3d at 540; *Sec. & Exch. Comm'n v. Barton*, 135 F.4th 206, 225 (5th Cir. 2025) ("It is a recognized principle of law that the district court has broad powers and wide discretion to determine the appropriate relief in an equity receivership."); *cf. Provident Mut. Life Ins. Co. of Philadelphia v. Vinton Co.*, 282 Mich. 84, 89 (1937) ("In foreclosure proceedings, the trial court has a broad discretion in relation to confirmation; and a sale in conformity with the decree entered will ordinarily be confirmed."); *see* 65 Am. Jur. 2d Receivers § 214 ("The court's confirmation is an exercise of the court's sound judicial discretion in view of all the surrounding facts and circumstances and in the interest of fairness, justice and rights of the respective parties, considering all material facts and evidence and application of legal principles essential to an informed, intelligent, and just decision." (footnotes omitted)).

In assessing whether the "sale is fair in terms and result and serves the best interests of the estate," § 2001(b), a court may consider "whether the price was fair and reasonable, and whether the sales process was proper." 65 Am. Jur. 2d Receivers § 214 (footnotes omitted); *Fleet Nat.*

12

*Bank v. H&D Ent., Inc.*, 96 F.3d 532, 540 (1st Cir. 1996); *Michigan Tr. Co. v. Cody*, 264 Mich. 258, 263 (1933). However, "[a] court will not refuse to confirm a private receiver's sale for inadequacy of price alone." 65 Am. Jur. 2d Receivers § 214; *cf. In re Prairie Coal Co.*, 40 F. Supp. 894, 895 (E.D. Ill. 1941) ("The courts do not ordinarily look with favor upon the practice of withholding approval of sale from the highest bidder at a public sale of bankruptcy assets where the sale was well attended, the price bid not unreasonably low and the sale in all respects fairly advertised and conducted. Particularly is this true where only a slightly higher price is subsequently offered for the assets by one who had opportunity to bid at the sale.").

### III. DISCUSSION

Before the Court is Receiver M. Shapiro Management Company LLC's motion for the entry of an order authorizing sale of the Receivership Property free and clear of all liens, in accordance with 28 U.S.C. §§2001–2002. ECF No. 25. Defendants oppose the motion on the ground that given the existence of a "higher and better offer to acquire the Receivership Properties," the Receiver's proposed sale "is not the highest and best offer available and therefore fails to satisfy the Receiver's statutory and fiduciary obligation to conserve the receivership estate's best interests." ECF No. 28, PageID.682–83.

The Court begins by examining whether the sale complies with the strictures of § 2001(b).

13

First, § 2001(b) provides that "[b]efore confirmation of any private sale, the court shall appoint three disinterested persons to appraise such property or different groups of three appraisers each to appraise properties of different classes or situated in different localities." § 2001(b). Some courts have interpreted this language to permit the receiver to submit valuations from appraisers to the reviewing court. *See, e.g., Sec. & Exch. Comm'n v. Fujinaga*, No. 13-1658, 2017 WL 4369467, at *1 (D. Nev. Oct. 2, 2017) ("The court held that 'the valuations submitted by the receiver *can* constitute appraisals for the purpose of satisfying the statutory requirements.'"); *S.E.C. v. T-Bar Res., LLC*, 07-1994, 2008 WL 4790987, at *3 (N.D. Tex. Oct. 28, 2008). This interpretation appears sound.

In the Receiver's motion, the Receiver submits that "[c]onsistent with the provisions of 28 U.S.C. §2001(b), the Receiver obtained opinions of value of three disinterested persons of the Receivership Property." ECF No. 25, PageID.650. However, the Receiver has not submitted these opinions or any further details as to the amount of these evaluations to the Court. In the absence of being provided with these appraisals to review, the Court is in no position to evaluate the fairness of the Receiver's proposed sale. As one court has explained:

> [Section] 2001(b) … permits courts to authorize the private sale of real property so long as the sale satisfies the best interests standard. Id. But "[b]efore" courts may confirm such a sale, they "shall" order three appraisals. Id. Section 2001(b)

14

> then instructs that a proposed price lower than two thirds of the appraisal value may not be confirmed, id., thereby deeming such a low number as counter to the best interests of the estate. Congress thus, through the plain text of § 2001(b), exercised its judgment of what satisfies the best interests standard in consideration of the appraisal values. Courts, therefore, shall similarly not pass judgment on the best interests standard absent the benefit of the mandated appraisals.

*T-Bar Res., LLC*, 2008 WL 4790987, at *3; *accord Fujinaga*, 2017 WL 4369467, at *1 ("However, the court was unable to determine whether these three proposed individuals met the requirements of 28 U.S.C. § 2001(b) without *in camera* review of the valuations and the credentials of the individuals."); *Wilson*, 2013 WL 1283437, at *2 ("The court shall appoint three appraisers — no ordering otherwise. No discretion, period. Consequently, before authorizing the private sale of real property held by Mr. Frank, three disinterested persons must be appointed as appraisers.").

On this ground alone, the Court cannot proceed to the next step. *See T-Bar Res., LLC*, 2008 WL 4790987, at *3 (courts "shall similarly not pass judgment on the best interests standard absent the benefit of the mandated appraisals"). Thus, the Court will order the Receiver to **SUPPLEMENT** its motion with the necessary appraisal information, and any other information required under § 2001(b) within seven (7) days of the date of this Order.

15

Accordingly, at this time, the Court need not address whether "the best interests of the estate will be conserved" by the sale. § 2001(b). Nor will the Court address Defendants' proposed "higher and better offer," ECF No. 28, PageID.683. Because the Managing Partners of the entity making that offer — John R. Gibbs and Michael Ouknine — are listed as guarantors for the loan secured by the Receivership Property and have defaulted in this lawsuit, it seems unlikely that the best interest of the estate will be served by allowing the defaulting guarantors to purchase the Receivership Property. But the Court will reserve judgment on this question until after a hearing in which all parties will be given the opportunity to be heard.

## IV.  CONCLUSION

For the reasons above, the Receiver's motion for the entry of an order authorizing sale of the Receivership Property free and clear of all liens, in accordance with 28 U.S.C. §§2001–2002 (ECF No. 25) is hereby ordered to be **SUPPLEMENTED** with supporting evidence as described herein by November 14, 2025.[2]

**SO ORDERED.**

---

[2] Because Defendants do not raise the failure of the Receiver to abide by the strictures of § 2001(b) — the only ground on which the Court rules today — Defendants may file a response to any supplementation filed by the Receiver within seven (7) days of the date such supplementation is filed.

16

Dated: November 10, 2025         /s/Terrence G. Berg
                                 ─────────────────────────────
                                 HON. TERRENCE G. BERG
                                 UNITED STATES DISTRICT JUDGE