UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

|  |  |
|---|---|
| **HUNTINGTON NATIONAL BANK,**<br><br>    Plaintiff,<br><br> vs.<br><br>**SHERIDAN PROPCO LLC et al.,**<br><br>    Defendants. | **2:23-CV-11458-TGB-DRG**<br><br>HON. TERRENCE G. BERG<br><br>**OPINION AND ORDER GRANTING RECEIVER'S MOTION FOR AN ENTRY OF AN ORDER AUTHORIZING THE SALE OF THE RECEIVERSHIP PROPERTY FREE AND CLEAR OF ALL LIENS (ECF NO. 92).** |

Two property companies took out loans of just over $12.5 million from Huntington National Bank secured by two apartment buildings in Detroit but the companies defaulted on the loans. Now Huntington is the Plaintiff in this lawsuit, suing the two property companies, who are the Defendants, to recover on the loans by selling the properties. The Court previously appointed a Receiver to take control of the properties, and now the Receiver moves for entry of an order authorizing the sale of the properties.

Now before the Court is an amended motion by the Court-appointed Receiver, M. Shapiro Management Company LLC, for the entry of an

order authorizing sale of the Receivership Property[1] free and clear of all liens, in accordance with 28 U.S.C. §§2001–2002. ECF No. 92. Defendants filed a response in opposition on December 8, 2025, ECF No. 160, the Receiver replied on December 12, 2025, ECF No. 181, Plaintiff The Huntington National Bank filed a brief in support of the amended motion on December 12, 2025, ECF No. 183, and Defendants filed a sur-reply on December 16, 2025, ECF No. 186. For the following reasons, the Receiver's motion is **GRANTED.**

---

[1] The Receivership Property comprises of two properties: (1) Land situated in the City of Detroit, Wayne County, Michigan, described as:

> Lots 1 and 2 of SUBDIVISION OF BLOCK NO. 100, CASS FARM, according to the plat thereof recorded in Liber 1 of Plats, Page 300, Wayne County Records.
> Tax Item Nos. 000932-9/Ward 04; 002019.147/Ward 23
> Commonly known as 4417 Second Avenue

and (2) Land situated in the City of Detroit, Wayne County, Michigan, described as:

> Lots 40 and East ½ of Lot 39 of WILLIAM A. BUTLER'S SUBDIVISION of Out Lots 102, 104 & 106 and that part of Out Lot 108 lying South of the South line of Putnam Avenue of the Subdivision of the Cass Farm, according to the plat thereof recorded in Liber 11 of Plats, Page 89 of Wayne County Records.
> Tax Item Nos. 000990/Ward 04; 002019.148/Ward 23
> Commonly known as 651 W. Hancock.

ECF No. 92, PageID.1215.

# I.  BACKGROUND

## A.     Procedural Background

On June 20, 2023, Plaintiff, The Huntington National Bank filed the instant action after Defendants Sheridan Propco LLC and Wellesley Propco LLC defaulted on a loan in an original amount of $12,570,000.00 (the "Loan"). ECF No. 1, PageID.2; ECF No. 1-2 (Promissory Note). Payment of the Loan was guaranteed by Defendants Michael Ouaknine Living Trust Dated August 27, 2019, John Roberts Gibbs, and Michael Ouaknine. ECF No. 1, PageID.5; ECF No. 1-6 (Guaranty of Payment). The loan is secured by the commercial real estate comprising the Receivership Property. *Id.* at PageID.4; ECF No. 1-2, PageID.29.

On June 23, 2023, the parties jointly stipulated to dismiss the case without prejudice. ECF No. 5. The parties did so "[p]ursuant to a certain forbearance agreement and related documents." *Id.* at PageID.216.

Under the terms of that forbearance agreement, the maturity date of the loan was extended from December 22, 2023 to March 31, 2024. ECF No. 6-3, PageID.249. "[A]s additional consideration to induce the Plaintiff to forbear on its default remedies and prosecution of its Complaint filed in this matter," "[t]he Defendants agreed and consented to the Appointment of the Receiver over the Borrower's assets." ECF No. 6, PageID.221.

Subsequently, the Defendants defaulted on their obligations under the settlement agreement. *Id.* at PageID.220.

On April 4, 2024, Plaintiff moved to reopen the case and for entry of a consent order appointing receiver. *Id.* at PageID.217. On April 25, 2024, the Court granted the motion and entered a consent order appointing a receiver. ECF No 7.

The consent order appointed M. Shapiro Management Company, LLC (the "Receiver") as the receiver "for Sheridan Propco LLC … and Wellesley Propco LLC … (collectively the 'Company') and all of the real, tangible and intangible property owned by the Company." *Id.* at PageID.317. Under the terms of the order, the Receiver was "ordered and directed to take immediate and exclusive possession, custody and control of the Receivership Estate." *Id.* Additionally, the Receiver was authorized "to transfer, sell, lease, license, exchange, collect or otherwise dispose of Receivership Property." *Id.* at PageID.325. As relevant here, the Receiver was deemed to be "a fiduciary for the benefit of all persons having or claiming an interest in the Receivership Estate." *Id.* at PageID.335.

On September 24, 2025, the Receiver filed a motion for the entry of an order authorizing sale of the Receivership Property free and clear of all liens. ECF No. 25. In the motion, the Receiver stated that as a result of its efforts, it

> procured an offer for the sale and purchase of the Receivership Property for the sum of $9,000,000.00 from Tzvi Koslowe and Franz Ivezaj on behalf of an entity to be formed (the "Offer"), on an 'as is-where is, with all faults assumed' basis, as set forth in a purchase agreement dated August 27, 2025 (the "Purchase Agreement").

4

*Id.* at 651; ECF No. 27 (Purchase Agreement). The Offer and Purchase Agreement also "provided that the prospective purchasers remit an earnest money deposit of $100,000.00." ECF No. 25, PageID.653

On October 8, 2025, Defendants filed a motion opposing Receiver's motion for the entry of an order authorizing sale of the Receivership Property free and clear of all liens. ECF No. 28. Defendants argued that "[t]he Receiver's proposed $9,000,000.00 sale price is not the highest and best offer available and therefore fails to satisfy the Receiver's statutory and fiduciary obligation to conserve the receivership estate's best interests." *Id.* at PageID.682.

Specifically, Defendants "presented a higher and better offer to acquire the Receivership Properties." *Id.* at PageID.683. Defendants attached this "offer" ("Defendants' Offer") to their opposition brief. ECF No. 28-2. Defendants' Offer appears to be a document in which "Sturgeon Bay Holding Company, LLC and/or a new entity" offers $9,500,000.00 for the Receivership Property and a $100,000.00 "deposit at signing of Purchase and Sale Agreement." *Id.* at PageID.695. The document was signed by John R. Gibbs and Michael Ouaknine, Managing Partners of Sturgeon Bay Holding Company, LLC. *Id.* at PageID.28-2. These two men are the same individuals who are listed as the guarantors of the Defendants' original debt to Huntington secured by the Receivership Property. *See* ECF No. 1-2; ECF No. 1-6.

On October 13, 2025, the Receiver replied. ECF No. 30. In the reply, the Receiver argued that the "letter of intent was not accompanied by a draft purchase agreement, and significantly, offered no evidence that the prospective purchaser has the financial wherewithal to consummate the transaction described in the letter of intent." *Id.* at PageID.699. The Receiver submits that

> absent a purchase agreement which sets forth terms and conditions at least comparable to those set forth in the agreement for which approval is sought in the Motion, and proof of immediately available funds to allow the transaction to close … the Defendants' objection to the sale should be overruled, given the underlying loan history and the defaults which resulted in the appointment of the Receiver.

*Id.*

On October 29, 2025, the Plaintiff filed a notice of submission of a consent judgment. ECF No. 36. Plaintiff explained that while it had initially planned to "defer entry of the Consent Judgment until after the Receiver's sale was completed, … "[c]ircumstances have changed." *Id.* at PageID.728. In the Notice, Plaintiff stated that it "supports approval of the Receiver's sale motion." *Id.* at PageID.728. Attached to this document was the consent judgment, signed by both parties. *See id.* at PageID.739.

On November 6, 2025, the Court entered the consent judgment. ECF No. 38. The consent judgment stated that "[a] default has occurred under the Forbearance Agreement, which default has been acknowledged

by Defendants." *Id.* at PageID.748. Accordingly, the Court ordered, adjudged, and decreed

> that Judgment is entered in favor of Plaintiff Huntington National Bank and against Defendants Sheridan Propco LLC, a Michigan limited liability company, Wellesley Propco LLC, a Michigan limited liability company, John R. Gibbs, an individual, Michael Ouaknine, an individual, and the Michael Ouaknine Living Trust Dated August 27, 2019, jointly and severally, in the amount of []$17,805,252.60 as of October 24, 2025, plus interest thereon at 12.78217% per annum from the date hereof.

*Id.* at PageID.749.

On November 10, 2025, the Court ordered Receiver to supplement its September 24, 2025 motion. ECF No. 40. Specifically, the Court concluded that the Receiver had not submitted appraisals of the property by three disinterested persons. *Id.* at PageID.767–68. Accordingly, the Court ordered the Receiver to supplement "its motion with the necessary appraisal information." *Id.* at PageID.768. Thus, the Court did not "address whether 'the best interests of the estate will be conserved' by the sale." *Id.* at PageID.769 (citing 28 U.S.C. §2001(b)).

Similarly, the Court did not "address Defendants' proposed 'higher and better offer.'" *Id.* (citing ECF No. 28, PageID.683). However, the Court noted that

> Because the Managing Partners of the entity making that offer — John R. Gibbs and Michael Ouknine — are listed as guarantors for the loan secured by the Receivership Property and have defaulted in this lawsuit, it seems unlikely that the

> best interest of the estate will be served by allowing the defaulting guarantors to purchase the Receivership Property.

*Id.* Nevertheless, the Court reserved judgment on that question until after a hearing. *Id.*

On November 13, 2025, the Receiver supplemented its September 24, 2025 motion. ECF No. 41. However, on November 19, 2025, the Receiver withdrew its September 24, 2025 motion. ECF No. 91. The Receiver explained that after it had supplemented its September 24, 2025, "upon the performance of its due diligence, the prospective purchaser informed the Receiver of circumstances which it believed merited a significant reduction in the purchase price." *Id.* at PageID.1204. "Thereafter, the Receiver and its counsel were informed that the prospective purchaser had agreed to the revised terms offered to complete the sale." *Id.* at PageID.1205. Thus, the Receiver stated that the purchase agreement and the motion for the entry of an order authorizing sale of the Receivership Property needed to be amended. *Id.*

On November 24, 2025, the Receiver filed an amended motion for the entry of an order authorizing sale of the Receivership Property free and clear of all liens, in accordance with 28 U.S.C. §§2001–2002. ECF No. 92. Defendants filed a response in opposition on December 8, 2025, ECF No. 160, the Receiver replied on December 12, 2025, ECF No. 181, Plaintiff The Huntington National Bank filed a brief in support of the

8

amended motion on December 12, 2025, ECF No. 183, and Defendants filed a sur-reply on December 16, 2025, ECF No. 186.

On January 29, 2026, a hearing was scheduled for February 13, 2026. ECF No. 286.

On January 29, 2026, the Court ordered the Receiver to publish "the terms of the proposed sale in the *Detroit Legal News* … and … file an affidavit on the docket confirming that such publication has occurred." ECF No. 285, PageID.2066. The Court also ordered the Receiver to provide notice of the hearing "to all interested parties to the sale *after* publication of the sale in the *Detroit Legal News* has been accomplished." *Id.* The Court explained that "This should include all persons that have made offers of sale to the Receiver for the Receivership Property and all persons that make offers of sale to the Receiver for the Receivership Property after publication of the sale in the *Detroit Legal News*." *Id.*

On February 2, 2026, Douglas Bernstein, attorney of record for the Receiver, filed an affidavit in which he stated that a notice of the proposed sale, including details of the February 13, 2026 hearing, had been published on February 2, 2026, in the *Detroit Legal News*. ECF No. 288, PageID.2074–75. Mr. Bernstein also filed the full text of the notice. *See* ECF No. 288-1. In the affidavit, Mr. Bernstein also stated that he served copies of the notice of proposed sale and details of the hearing to following parties who had expressed interest in purchasing the Receivership Property: Modli Acquisitions, Raymond Debates, Titan 3

9

Capital, Tzvi Koslowe, Innovo, Wellington Property Corp, Michael Ouknine, John R. Gibbs. ECF No. 288, PageID.2075–76.

On February 13, 2026, the Court held a hearing on the November 24, 2025 amended motion for the entry of an order authorizing sale of the Receivership Property. Huntington National Bank, Sheridan Propco LLC, Wellesley Propco LLC, John R. Gibbs, Red 313 Apartments, LLC, and the Receiver made an appearance. No other entities or individuals attended the hearing.

### B. Proposed Sale of the Receivership Property

In its motion, the Receiver asks the Court to enter

an order authorizing the sale of the Receivership Property free and clear of all mortgages, liens, claims and encumbrances, with such mortgages, liens, claims and encumbrances to be transferred to the proceeds of sale, having the same validity and priority as existed prior to sale.

ECF No. 92, PageID.1213.

The Receiver represents that it "sought out the services of [three appraisers] Berkadia, Income Property Organization and Colliers to furnish valuations of the Receivership Property." *Id.* at PageID.1209. The Receiver attached a summary of their opinions, copies of their valuation reports, and each of their curriculum vitae. *Id.*; ECF Nos. 92-2, 92-3, 92-4, 92-5, 92-6, 92-7.

The Receiver states that

the Receivership Property has been marketed since December 3, 2024, utilizing the Loopnet, Costar, MLS Realcomp and

10

> Crexi portals, email blasts and hard copy flyers. As a result of the marketing efforts, the Receiver and/or the broker conducted thirteen tours of the Receivership Property with prospective purchasers and received nine offers for purchase.

*Id.* at PageID.1208–09.

These efforts bore fruit: "the Receiver procured an offer for the sale and purchase of the Receivership Property for the sum of $9,000,000.00 from Tzvi Koslowe and Franz Ivezaj on behalf of an entity to be formed." *Id.* at PageID.1210.

> However,

> Upon performing due diligence of the Receivership Property, the Prospective Purchaser discovered conditions which it believed merited an adjustment to the Purchase Price. After extensive negotiations, the Receiver and the Prospective Purchaser agreed upon a reduction in the sum of $500,000.00, resulting in the contemplated Purchase Price being $8,500,000.00.

*Id.* at PageID.1211. "To that end, the Receiver and the entity formed by the Prospective Purchaser, "Red 313 Apartments LLC", executed a First Amendment to Purchase Agreement, dated November 21, 2025." *Id.* "In consideration of the accommodations made in the Amendment, Red 313 Apartments LLC agreed to (a) waive all contingencies to closing, other than this Court not granting authority to the Receiver to consummate the transaction, or to the default by the Receiver, and (b) remit an additional deposit in the sum of $150,000.00, bringing the total deposit to $250,000.00." *Id.*

The Receiver also represents that "[a]ccording to a title commitment dated as of July 30, 2025, the following recorded liens encumbered the Sheridan Property":

- A construction mortgage granted in favor of TCF National Bank (n/k/a The Huntington National Bank);
- An assignment of rents and leases granted in favor of TCF National Bank (n/k/a The Huntington National Bank);
- A claim of lien asserted by Gold Star Commercial, Inc.;
- A claim of lien asserted by BG Personnel, L.P.

*Id.* at PageID.1211–12. "According to the same title commitment, the only recorded liens encumbering the Wellesley Property are the mortgage and assignment of rents and leases granted in favor of TCF National Bank (n/k/a The Huntington National Bank) referenced above." Id. at PageID.1212.

> The Receiver represents that it
>
> believes, in the reasonable exercise of its business judgment, that the Purchase Agreement, as modified by the Amendment, constitutes the highest and best offer for the purchase of the Receivership Property which can be expected, and that it should be accepted, as being in the best interest of the receivership estate, and to minimize the further expense to be incurred. The Receiver believes that additional marketing efforts would not result in any higher or better offers.

*Id.* at PageID.1212–13.

> Additionally, the Receiver proposed

12

that the net proceeds of sale, after payment of outstanding taxes, commissions, and other customary closing costs, be applied as follows:

    A.  First, to the payment of unpaid fees of the Receiver and its professionals and any other expenses incurred by the Receiver, less a reserve for reasonably anticipated post-closing expenses;

    B.  Second, to the repayment of outstanding receivership certificates, if any;

    C.  Third, to The Huntington National Bank, as successor to TCF National Bank, until the indebtedness secured by its mortgage has been fully satisfied;

    D.  Fourth, to the payment of any additional liens which encumber the Receivership Property; and,

    E.  Fifth, to the Clerk of the Court, to be held pending the further order of the Court.

*Id.* at PageID.1213–14.

Thus, the Receiver requests that the Court enter an order accomplishing the sale as set out in detail in the Conclusion below. *Id.* at PageID.1216–17.

On December 18, 2025, Defendants filed a response opposing Receiver's motion for the entry of an order authorizing sale of the Receivership Property free and clear of all liens. ECF No. 160. Defendants argue that the Receiver's proposed sale to Red 313 Apartments LLC is not the highest and best offer available. *Id.* at PageID.1660–61. Instead, Defendants represent that

Borrower Defendants, together with prospective purchaser Michael Ouaknine and John Gibbs (on behalf of an entity to be formed), have papered and executed a detailed Purchase Agreement at a $9,500,000 purchase price (the "Proposed

13

> $9,500,000 PSA"), in the form requested by the Receiver, and have tendered that PSA as a formal, binding offer to the Receiver.

*Id.* at PageID.1661. Defendants attach a "Purchase Agreement" to their response. ECF No. 160-2. Defendants represent that the "Purchaser stands ready to fund a $100,000 earnest-money deposit and to close promptly following entry of a sale-approval order and the Receiver's countersignature." ECF No. 160, PageID.1661.

> Defendants also represent that they

> have secured an institutional equity commitment from Arctaris Opportunity Zone Funds, LLC and related entities, memorialized in an executed term sheet under which Arctaris intends to invest approximately $10,000,000 of preferred equity into the acquiring entity, Second and Hancock, LLC, to recapitalize and improve the properties.

*Id.* at PageID.1661. Defendants attach a "draft summary" of the terms for this "proposed equity investment." ECF No. 160-3, PageID.1690.

Defendants argue that because "[t]his offer is more than 10% higher than the purchase price the Receiver is seeking to approve … the statutory 'best interests of the estate' standard cannot be satisfied by approving the inferior $8,500,000 sale." ECF No. 160, PageID.1661–62.

On December 12, 2025, the Receiver replied, stating that it believed "that the best interests of the receivership will be conserved by the approval of the sale of the Receivership Property to the Prospective

14

Purchaser, as required under 28 U.S.C. §2001(b)." ECF No. 181, PageID.1773. Specifically, the Receiver noted:

A. While the Prospective Purchaser, Red 313 Apartments LLC, "has conducted extensive due diligence at the Receivership Property, having had testing performed both by an environmental consultant and a structural engineer, upon request to and with the consent of, the Receiver … no due diligence has been requested or performed in furtherance of the Alternative Purchase Agreement, nor have the proponents at any time contacted the Receiver's broker. The Receiver does not believe that either Mr. Gibbs or Mr. Ouaknine have been at the Receivership Property since the Receiver was appointed on April 25, 2024."

B. "The Prospective Purchaser has remitted an earnest money deposit totaling $250,000.00, which is being held in escrow by First American Title Company. No earnest-money deposit has been tendered in furtherance of the Alternative Purchase Agreement, which proposes a deposit of $100,000.00."

C. "The Prospective Purchaser has waived all due diligence contingencies. The Alternative Purchase Agreement 'anticipates a confirmatory due diligence and documentation period of 30 days … from the signing of the Term Sheet…'

D. There are several "[f]actors of concern to the Receiver in considering the viability of the Alternative Purchase Agreement":
   o The document has been signed by Defendant John Gibbs, as authorized signatory on behalf of Sturgeon Bay Partners, LLC, but has not been signed by the prospective investor, Arctaris Opportunity Zone Fund 2022, LLC.
   o A condition of the investment by Arctaris Opportunity Zone Fund 2022, LLC is that the '… Project qualifies for the City of Detroit's PILOT program.' No evidence was furnished evidencing the fulfillment of this

> condition, or that an application for participation has been submitted. If not approved, no estimated time frame for the fulfillment of this condition was offered. The Receiver believes that prior efforts for inclusion in the PILOT program have been unsuccessful."
>
> o "The document states in the preamble that it 'sets forth the general **non-binding** terms to an investment opportunity being considered…'"

*Id.* at PageID.1769–71.

Additionally, the Receiver states

> Until the Original Motion and the Amended Motion, respectively, were filed, the Defendants took no action whatsoever in furtherance of making arrangements for the purchase of the Receivership Property…. Given the failure to demonstrate the financial wherewithal or other ability to close upon the terms of the Alternative Purchase Agreement, *the Receiver is fearful that the Response was submitted solely to prevent the approval of a sale to the Prospective Purchaser.* If the sale of the Receivership Property is not approved, or otherwise does not close, the immediate consequences include the continuation of the receivership for an indeterminate period, and the need for significant additional funding by Huntington both for the payment of real estate taxes ($42,150 due January 15, 2026 for winter taxes) and maintenance (approximately $7,500.00 per month for routine upkeep, exclusive of any extraordinary occurrences which may arise).

*Id.* at PageID.1771–72 (emphasis added).

On December 15, 2025, the Plaintiff filed a brief in support of the Receiver's amended motion. ECF No. 183. Plaintiff states that

> Like the Receiver, Huntington is concerned that defendants John Gibbs and Michael Ouaknine, who have an outstanding judgment against them in favor of Huntington in this case,

16

proffered an "Alternative Purchase Agreement" for the sole purpose of preventing the approval of the sale of the Receivership Property to "Prospective Purchaser," Red 313 Apartments LLC, which has waived contingencies and is ready and able to close the sale.

*Id.* at PageID.1779. "Huntington incorporates by reference the Receiver's reply and expresses the following additional concerns": "Neither Gibbs nor Ouaknine have made any voluntary payments to Huntington for application to the judgment. Yet somehow now they assert and want the Court and Huntington to delay a committed sale upon, in part, their purported ability to raise money for the purchase of the Receivership Property." *Id.* Additionally, Plaintiff argues that

The Alternative Purchase Agreement they proffer in their response … is indefinite and rife with contingencies. For example, one of the contingencies for the yet-to-be-formed prospective investor entity, Arctaris Opportunity Zone Fund 2022, LLC, is that the properties qualify for a government program, but there is no evidence of an application for participation in the program or an estimated time frame for fulfilling this condition. … [W]ithout doubt, the risk of denial of government programs and support is substantial. This is not the first time defendants have had an opportunity to pursue alleged government support to address the operations of the properties. Four years ago, the defendants and Huntington agreed upon a lengthy forbearance period after default which gave defendants the chance to pursue government support and replacement financing. Huntington and the Receiver would not be here now had that been real; there is no reason to believe it is real now.

*Id.* at PageID.1780.

17

Thus, Plaintiff argues, "the Receiver is justified in believing that the Prospective Buyer's $8,5000,000 offer that can close promptly is the best offer and Huntington supports the Receiver's judgment." *Id.* at PageID.1782.

On December 16, 2025, Defendants filed a "Sur Response." ECF No. 186, PageID.1793. However, a "party wishing to file a sur-reply must file a motion for leave that sets forth 'good cause.'" *Hardy v. Genesee Cnty. Cmty. Action Res. Dep't*, No. 24-11190, 2024 WL 4756891, at *1 (E.D. Mich. Nov. 12, 2024) (Stafford, J.). Defendants did not do so. Thus, the Court struck Defendants' filing contained at ECF No. 186.

## II. LEGAL BACKGROUND

Federal Rule of Civil Procedure 66 governs the appointment of receivers in federal court. That rule provides that "the practice in administering an estate by a receiver or a similar court-appointed officer must accord with the historical practice in federal courts or with a local rule." Fed. R. Civ. P. 66. "The role of the receiver is to safeguard disputed assets, to suitably administer the receivership property, and to assist the district court in achieving a final, equitable distribution of the assets." *Liberte Cap. Grp., LLC v. Capwill*, 248 F. App'x 650, 655 (6th Cir. 2007).

Section 2001 of Title 28 of the United States Code governs the sale of real property within a court-ordered receivership. Subdivision (b) provides for the private sale of such real property. *See* § 2001(b). The subdivision provides that

> After a hearing, of which notice to all interested parties shall be given by publication or otherwise as the court directs, the court may order the sale of such realty or interest or any part thereof at private sale for cash or other consideration and upon such terms and conditions as the court approves, if it finds that the best interests of the estate will be conserved thereby. Before confirmation of any private sale, the court shall appoint three disinterested persons to appraise such property or different groups of three appraisers each to appraise properties of different classes or situated in different localities. No private sale shall be confirmed at a price less than two-thirds of the appraised value. Before confirmation of any private sale, the terms thereof shall be published in such newspaper or newspapers of general circulation as the court directs at least ten days before confirmation. The private sale shall not be confirmed if a bona fide offer is made, under conditions prescribed by the court, which guarantees at least a 10 per centum increase over the price offered in the private sale.

*Id.* Accordingly,

> [w]hile § 2001(b) contains discretionary language that allows courts to order the sale of realty "upon such terms and conditions as the court approves, if it finds that the best interests of the estate will be conserved thereby," the statute also includes mandatory language stating that (1) the court "shall appoint" three appraisers, (2) "[n]o private sale shall be confirmed at a price less than two-thirds of the appraised value," (3) the sale "shall be published" in newspapers at least ten days before confirmation, and (4) the sale "shall not be confirmed" if a bona fide offer guaranteeing "at least a 10 per centum increase" is made.

*Huntington Nat. Bank v. Najero, Inc.*, No. 13-11632, 2014 WL 5473054, at *1 (E.D. Mich. Oct. 27, 2014) (Cleland, J.); *accord SEC v. Priv. Equity*

19

*Mgmt. Grp., LLC*, No. 09-2901, 2009 WL 10676006, at *2 (C.D. Cal. Nov. 20, 2009).

However, while a court may not waive the mandatory requirements of § 2001(b), some courts have held that the parties *may*—for instance, by stipulating to a receivership order. *See, e.g., Najero, Inc.*, 2014 WL 5473054, at *1 ("The permissive language allowing the Court discretion to determine what is in the best interests of the estate is therefore limited by the minimum standards delineated by Congress of what satisfies the best interest standard. These standards cannot be waived by this Court."); *Huntington Nat'l Bank v. Big Sky Dev. Flint, LLC*, No. 10-10346, 2010 WL 3702361, at *7 (E.D. Mich. Sept. 16, 2010) (Cohn, J.); *Najero, Inc.*, 2014 WL 5473054, at *2; *Sec. & Exch. Comm'n v. EB5 Asset Manager, LLC*, No. 15-62323, 2016 WL 7508252, at *2 (S.D. Fla. Mar. 25, 2016) ("While the Court may not waive the mandatory requirements of § 2001(b), the parties may."); *but see U.S. S.E.C. v. Wilson*, No. 12-CV-15062, 2013 WL 1283437, at *2 (E.D. Mich. Mar. 28, 2013) (Ludington, J.) (holding that the requirements of § 2001 may not be waived by the parties). Although they have not done so here, parties may also "confer broad powers upon the receiver up to and including the private sale of real property without § 2001(b)'s formalities." *EB5 Asset Manager, LLC*, 2016 WL 7508252, at *2.

Moreover, in addition to the requirements of § 2001(b), a court must also "find[] that the best interests of the estate will be conserved" by the

20

sale. § 2001(b). In assessing whether the "sale is fair in terms and result and serves the best interests of the estate," the court "has wide discretion." *H&D Ent., Inc.*, 96 F.3d at 540; *Sec. & Exch. Comm'n v. Barton*, 135 F.4th 206, 225 (5th Cir. 2025) ("It is a recognized principle of law that the district court has broad powers and wide discretion to determine the appropriate relief in an equity receivership."); *cf. Provident Mut. Life Ins. Co. of Philadelphia v. Vinton Co.*, 282 Mich. 84, 89 (1937) ("In foreclosure proceedings, the trial court has a broad discretion in relation to confirmation; and a sale in conformity with the decree entered will ordinarily be confirmed."); *see* 65 Am. Jur. 2d Receivers § 214 ("The court's confirmation is an exercise of the court's sound judicial discretion in view of all the surrounding facts and circumstances and in the interest of fairness, justice and rights of the respective parties, considering all material facts and evidence and application of legal principles essential to an informed, intelligent, and just decision." (footnotes omitted)).

In assessing whether the "sale is fair in terms and result and serves the best interests of the estate," § 2001(b), a court may consider "whether the price was fair and reasonable, and whether the sales process was proper." 65 Am. Jur. 2d Receivers § 214 (footnotes omitted); *Fleet Nat. Bank v. H&D Ent., Inc.*, 96 F.3d 532, 540 (1st Cir. 1996); *Michigan Tr. Co. v. Cody*, 264 Mich. 258, 263 (1933). However, "[a] court will not refuse to confirm a private receiver's sale for inadequacy of price alone." 65 Am. Jur. 2d Receivers § 214; *cf. In re Prairie Coal Co.*, 40 F. Supp. 894, 895

21

(E.D. Ill. 1941) ("The courts do not ordinarily look with favor upon the practice of withholding approval of sale from the highest bidder at a public sale of bankruptcy assets where the sale was well attended, the price bid not unreasonably low and the sale in all respects fairly advertised and conducted. Particularly is this true where only a slightly higher price is subsequently offered for the assets by one who had opportunity to bid at the sale.").

## III. DISCUSSION

Before the Court is Receiver M. Shapiro Management Company LLC's amended motion for the entry of an order authorizing sale of the Receivership Property free and clear of all liens, in accordance with 28 U.S.C. §§2001–2002. ECF No. 92. Defendants oppose the motion on the ground that because their "offer is more than 10% higher than the purchase price the Receiver is seeking to approve … the statutory 'best interests of the estate' standard cannot be satisfied by approving the inferior $8,500,000 sale." ECF No. 160, PageID.1661–62.

The Court begins by examining whether the sale complies with the strictures of § 2001(b).

First, § 2001(b) provides that "[b]efore confirmation of any private sale, the court shall appoint three disinterested persons to appraise such property or different groups of three appraisers each to appraise properties of different classes or situated in different localities." § 2001(b). Some courts have interpreted this language to permit the

22

receiver to submit valuations from appraisers to the reviewing court. *See, e.g., Sec. & Exch. Comm'n v. Fujinaga*, No. 13-1658, 2017 WL 4369467, at *1 (D. Nev. Oct. 2, 2017) ("The court held that 'the valuations submitted by the receiver *can* constitute appraisals for the purpose of satisfying the statutory requirements.'"); *S.E.C. v. T-Bar Res., LLC*, 07-1994, 2008 WL 4790987, at *3 (N.D. Tex. Oct. 28, 2008). This interpretation appears sound. *See Huntington Nat'l Bank v. Saint Catharine Coll., Inc.*, No. 16-465, 2016 WL 7330594, at *2 (W.D. Ky. Dec. 16, 2016) ("In fulfilling this role, receivers may seek the appraisals themselves.").

The Receiver appointed "Berkadia, Income Property Organization and Colliers to furnish valuations of the Receivership Property." ECF No. 92, PageID.1209.

The Receiver represents that

> As of April 8, 2025, the date of the valuation which it prepared, Income Property Organization was disinterested. However, by agreement dated April 29, 2025, Income Property Organization was engaged by the Receiver to act as broker for the marketing and sale of the Receivership Property. As a result, out of an abundance of caution, a copy of an appraisal dated as of February 21, 2025, prepared by CBRE for The Huntington National Bank is also provided in support of the proposed sale.

*Id.* The Court finds that this is unnecessary: at the time Income Property Organization was appointed and at the time it prepared the valuation, it

23

was disinterested. However, the Receiver does not appear to have filed the complete valuation of Income Property Organization. *See* ECF No. 92-3, PageID.1256 (only containing the valuation for the property located at 651 W. Hancock, but not the property at 4417 Second Avenue). Thus, the Court will consider the valuation of CBRE.

The Court has reviewed the curriculum vitae of the individuals employed by Berkadia and Colliers who furnished the evaluation reports. *See* ECF No. 92-7. These curriculum vitae reflect that those who furnished the evaluation reports have no relationship to Plaintiff or any of the Defendants. *Id.* Thus, the Court concludes that Berkadia and Colliers are disinterested.

The Court has also reviewed the "Certification" signed by the individuals employed by CBRE who furnished CBRE's evaluation reports. *See* ECF No. 92-8, PageID.1322. This document reflects that CBRE is disinterested.

Thus, the Court concludes that the Receiver appointed "three disinterested persons to appraise," § 2001(b), the Receivership Property.

Second, § 2001(b) provides that "No private sale shall be confirmed at a price less than two-thirds of the appraised value."

Colliers estimated that the Receivership Property is valued at $10,500,000 to $11,500,000. ECF No. 92-3, PageID.1241.

Berkadia estimated that 651 W. Hancock ("Wellesley Apartments") is valued at $2,090,000 ("Strong Price Support") to $2,250,000 ("Potential

Reach"). ECF No. 92-4, PageID.1286. Berkadia estimated that 4417 Second Avenue ("Sheridan Court Apartments") is valued at $8,450,000 ("Strong Price Support") to $9,100,000 ("Potential Reach"). ECF No. 92-6, PageID.1299. Accordingly, Berkadia estimated that the Receivership Property is valued at $10,540,000 to $11,350,000. *See also* ECF No. 92-5, PageID.1297.

CBRE estimates that the Receivership Property is valued at $8,500,000 to $8,700,000. ECF No. 92-8, PageID.1320.

Thus, the average of the range of the appraisals of the Receivership Property is $9,846,666.67 (($8,500,000 + $10,540,000 + $10,500,000)/3 = $9,846,666.67) to $10,516,666.67 (($8,700,000 + $11,500,000 + $11,350,000)/3 = $10,516,666.67). The median value of this range is $10,181,666.67 (($9,846,666.67+ $10,516,666.67)/2 = $10,181,666.67).

Under § 2001(b), no sale shall be confirmed "at a price less than two-thirds of the appraised value." § 2001(b). Here, two-thirds of the appraised value is $6,787,777.78 ($10,181,666.67*2/3 = $6,787,777.78). The Receiver's proposed sale is valued at $8,500,000, which is higher than $6,787,777.78. Thus, the Receiver's proposed sale is not "at a price less than two-thirds of the appraised value." § 2001(b).

Third, § 2001(b) provides that "[b]efore confirmation of any private sale, the terms thereof shall be published in such newspaper or newspapers of general circulation as the court directs at least ten days before confirmation."

25

On February 2, 2026, terms of the Receiver's proposed sale were published in the *Detroit Legal News*. ECF No. 288, PageID.2074–75; ECF No. 288-1. The *Detroit Legal News* is a newspaper of general circulation. Thus, the terms of the proposed sale were published in a newspaper of general circulation at least ten days before this Order, confirming the sale.

Fourth, § 2001(b) requires that "[t]he private sale shall not be confirmed if a bona fide offer is made, under conditions prescribed by the court, which guarantees at least a 10 per centum increase over the price offered in the private sale." This is the only requirement of § 2001(b) which Defendants dispute.

Here, as confirmed at the hearing, the only offer for the Receivership Property other than the Red 313 Apartments, LLC offer is the Defendants' offer at a $9,500,000 purchase price, *see* ECF No. 160, PageID.1661. This offer is more than 10% higher than the offer procured by the Receiver. Thus, the next question the statute requires the Court to answer is whether Defendants' offer is a "bona fide" offer.

The term "bona fide" is not defined in § 2001(b). Nor is the Court aware of any case law examining the meaning of "bona fide" as found in § 2001(b) as it relates to the present context. Yet, the Court is not adrift in uncharted waters as to the term's meaning: It is a "settled principle of statutory construction that, absent contrary indications, Congress intends to adopt the common law definition of statutory terms," *United*

*States v. Shabani*, 513 U.S. 10, 13 (1994), and "bona fide" has an established common law meaning, *see SunAmerica Hous. Fund 1050 v. Pathway of Pontiac, Inc.*, 33 F.4th 872, 879 (6th Cir. 2022): whether the offeror had the intentions *and* capabilities to make an offer to purchase the property. *See id.* In other words, "under the 'common law' definition, courts focus on whether the offeror actually intended to comply and was, in fact, capable of following through with a purchase." *Id.*

Here, the record before the Court contains facts introducing considerable doubts as to whether Defendants' offer is a "bona fide" offer. Such facts include the following:

- Defendants have an outstanding judgment against them in favor of Plaintiff in this case. *See* ECF No. 6. This judgment resulted from Defendants' default on the terms of a construction loan pertaining to the Receivership Property. *See id.* As Plaintiff has described, Defendants "seek now to lead a purchase back of the property they managed previously to lead to a default and receivership without addressing at all the many millions of dollars that will remain unpaid under the judgment." ECF No. 183, PageID.1779.
- Defendants have not "made any voluntary payments to Huntington for application to the judgment." *Id.*
- The Receiver has expressed concern "*that the Response was submitted solely to prevent the approval of a sale to the Prospective Purchaser*." ECF No. 181, PageID.1772 (emphasis added). Plaintiff has expressed a similar concern. ECF No. 183, PageID.1779.
- Defendants do not appear to have conducted due diligence on the Receivership Property or even have been to the Receivership Property since the appointment of the Receiver. ECF No. 181, PageID.1769–70.

- "The Alternative Purchase Agreement 'anticipates a confirmatory due diligence and documentation period of 30 days … from the signing of the Term Sheet….'" *Id.* at PageID.1770; *see* ECF No. 160-3, PageID.1692.

- A condition of the investment by Arctaris Opportunity Zone Fund 2022, LLC is that the '… Project qualifies for the City of Detroit's PILOT program.' No evidence was furnished evidencing the fulfillment of this condition, or that an application for participation has been submitted. … The Receiver believes that prior efforts for inclusion in the PILOT program have been unsuccessful." *Id.* at PageID.1771. Plaintiff highlights "without doubt, the risk of denial of government programs and support is substantial." ECF No. 183, PageID.1780.

- The investment agreement between Defendants and Arctaris Opportunity Zone Fund 2022, LLC has *not* been signed by Arctaris Opportunity Zone Fund 2022. *See* ECF No. 160-3, PageID.1696.

Based on these facts, the Court cannot find that the Defendants actually intend to purchase and are in fact capable of purchasing the Receivership Property. While counsel for the Property Companies and counsel for Gibbs argued at the February 13, 2026 hearing that it was difficult to assemble firm financing offers in the absence of a signed Purchasing Agreement, they cannot gainsay the aforementioned concerns, which are the kinds of issues that would cause a seller to be hesitant to sign a purchasing agreement, as is the case here. Accordingly, the Court finds therefore that no *bona fide* offer has made that guarantees at least a 10 per centum increase over the price offered.[2]

---

[2] Additionally, during the February 13, 2026 hearing, counsel for The Huntington National Bank represented that during a recent

On the other hand, the Receiver's proposed sale to Red 313 Apartments, LLC is a bona fide offer. First, Red 313 Apartments, LLC has remitted a deposit of $250,000.00, held in escrow by First American Title Company. ECF No. 181, PageID.1770. Second, the Receiver and Red 313 Apartments, LLC have entered into a purchase agreement, signed by both parties, which waives all contingences and will close "within three business days of … the expiration of the period by which the Sale Approval Order or any Order confirming the sale can be appealed," unless a claim of appeal of such an order has been timely filed and a stay has been issued. ECF No. 92-10, PageID.1490.

Thus, the Receiver's proposed sale meets the four mandatory conditions of § 2001(b).

The Court turns next to the question of whether "the best interests of the estate will be conserved" by the proposed sale. § 2001(b). In assessing whether the "sale is fair in terms and result and serves the best interests of the estate," the court "has wide discretion." *H&D Ent., Inc.*, 96 F.3d at 540.

Here, the Court finds the best interests of the estate will be conserved by the Receiver's proposed sale. The Receiver has represented that "the proposed sale set forth in the Purchase Agreement to be the highest and best." ECF No. 92, PageID.1210. Additionally, the Receiver

---

deposition, Michael Ouaknine testified, under oath, that funding for the Defendants' alternative offer is uncertain.

has stated, "in the reasonable exercise of its business judgment, that the Purchase Agreement, as modified by the Amendment … should be accepted[] as being in the best interest of the receivership estate[] and to minimize the further expense to be incurred." *Id.* at PageID.1213. The Receiver has also represented "that additional marketing efforts would not result in any higher or better offers." *Id.* The Court agrees. Given that this is the highest and best bona fide offer for the Receivership Property, given the high costs on the parties on continuing the Receivership, and given the low probability of a better offer, the best interests of the estate will be conserved by the Receiver's proposed sale.

Accordingly, the Court **GRANTS** the Receiver's Motion.

## IV.  CONCLUSION

For the reasons above, the Receiver's motion for the entry of an order authorizing sale of the Receivership Property free and clear of all liens, in accordance with 28 U.S.C. §§2001–2002 (ECF No. 92) is hereby **GRANTED**. However, this Order does not resolve the last remaining claim and does not close the case.

Accordingly, **IT IS ORDERED:**

1. The Court-appointed Receiver is authorized to consummate the sale of the Receivership Property upon the terms and conditions set forth in the Purchase Agreement and Amendment defined in the Motion, and to execute all documents necessary for the transfer of title to the Receivership Property

2. The Purchase Agreement, the Amendment and any related documents necessary for the closing of the sale of the Receivership Property, without having any impact upon the Purchase Price, may be modified by the Receiver in a writing signed by the Receiver, without further order of the Court.

3. The sale of the Receivership Property shall be free and clear of all mortgages, liens, claims and encumbrances, and such mortgages, liens, claims and encumbrances shall be transferred to the proceeds of sale, having the same validity and priority as existed prior to sale, with no right of redemption available to any party.

4. The net proceeds of sale, after payment of outstanding taxes, commissions, and other customary closing costs, shall be disbursed as follows, after confirmation of the sale, as provided below, without the further order of the Court:

    A. First, to the payment of unpaid fees of the Receiver and its professionals and any other expenses incurred by the Receiver, less a reserve for reasonably anticipated post-closing expenses;

    B. Second, to the repayment of outstanding receivership certificates, if any;

    C.    Third, to The Huntington National Bank, as successor to TCF National Bank, until the indebtedness secured by its mortgage has been fully satisfied;

    D.    Fourth, to the payment of any additional liens which encumber the Receivership Property; and,

    E.    Fifth, to the Clerk of the Court, to be held pending the further order of the Court.[3]

5.    The Receiver shall submit an Order to the Court for entry, confirming the sale, which shall include;

    A.    The date upon which closing of the sale was held;

    B.    Confirmation of the Receiver's compliance with the conditions of the order authorizing the sale of the Receivership Property; and,

    C.    The sale price.

6.    The Receivership Property affected by this Order is described as:

**Parcel 1**
Land situated in the City of Detroit, Wayne County, Michigan, described as:

> Lots 1 and 2 of SUBDIVISION OF BLOCK NO. 100, CASS FARM, according to the plat thereof recorded in Liber 1 of Plats, Page 300, Wayne County Records.
> Tax Item Nos. 000932-9/Ward 04; 002019.147/Ward 23
> Commonly known as 4417 Second Avenue

**Parcel 2**
Land situated in the City of Detroit, Wayne County, Michigan, described as:

> Lots 40 and East ½ of Lot 39 of WILLIAM A. BUTLER'S SUBDIVISION of Out Lots 102, 104 & 106 and that part of Out Lot 108 lying South of the South line of Putnam Avenue of the Subdivision of the Cass

---

[3] Because the Court ordered that the Receiver shall publish the terms of sale in the *Detroit Legal News* more than ten days from the date of the hearing, during which it was determined that no *bona fide* offers had been made, the Court excluded proposed paragraph 5 from the Receiver's proposed order. *See* ECF No. 92-2, PageID.1235.

Farm, according to the plat thereof recorded in Liber 11 of Plats, Page 89 of Wayne County Records.
Tax Item Nos. 000990/Ward 04; 002019.148/Ward 23
Commonly known as 651 W. Hancock.

7. The Wayne County Register of Deeds shall accept a certified copy of this Order for recording.

8. Any title company and its agents may rely upon this Order and the Receivership Order in the issuance of any title insurance policy.

9. Pursuant to Fed. R. Civ. P. 54(b), the Court expressly determines that there is no just reason for delay and this order shall be deemed to be a final order.

Dated: February 18, 2026          s/Terrence G. Berg

HON. TERRENCE G. BERG
UNITED STATES DISTRICT JUDGE

33